RECEIVED
JUL 1 3 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| RANDAL MORGAN, ET AL. | CIVIL ACTION NO. 09-2091 |
| VERSUS | JUDGE DOHERTY |
| HERCULES DRILLING CO., LLC, ET AL. | MAGISTRATE JUDGE HANNA |

**MEMORANDUM RULING**

Pending before the Court is the Motion for Summary Judgment [Doc. 52] filed by defendant F.J. Brown & Associates, Inc. ("FJB"). In its motion, FJB seeks dismissal of "all claims asserted against it" on grounds FJB owed no duty to plaintiff and did not breach any duty to plaintiff. Plaintiff opposes the motion [Doc. 59]. For the following reasons, FJB's motion is DENIED.

**I.    Factual and Procedural Background**

The instant lawsuit arises out of injuries allegedly sustained by the plaintiff, an employee of Offshore Energy Services, Inc. ("OES"). Plaintiff worked for OES for approximately sixteen years; in the hammer department for ten years, after which he transferred to the casing department. Although he was working in the casing department at the time of his injury, the plaintiff had agreed to go offshore on a hammer job because OES was busy and had run out of regular offshore workers in the hammer department.

At the time of plaintiff's injury, McMoran Oil & Gas, LLC ("McMoran") was the operator of the well in question. McMoran contracted with Hercules Drilling Co., LLC for the use of the inland drilling barge Hercules 49. McMoran contracted with FJB to supply a "company man," and with plaintiff's employer, OES, to provide the hammer services.

The hammer that was to be used on plaintiff's assignment was a hydraulic hammer and consisted primarily of two parts: the can and the ram. When the plaintiff arrived at the drilling barge, the hammer was not assembled. Plaintiff and members of the drilling crew bolted the can and the ram together using 40 bolts to hold the can to the ram. Once hammer operations were completed, the hammer assembly was to be offloaded to another vessel for transport to shore. However, the weight of the assembled hammer – approximately 30,000 lbs. – exceeded the lift capacity of the crane. Therefore, it was necessary to disassemble the can from the ram so the parts could be loaded separately onto the transport vessel. It was during the disassembly of the hammer – which required the plaintiff to remove the 40 bolts (which had become tightly bolted during the hammering process) that held the can to the ram – that the plaintiff was injured.

Plaintiff Randal Morgan and his wife filed the instant lawsuit on December 10, 2009 against Hercules and McMoran for personal injuries and damages under the general maritime law and Section 905(b) of the Longshoreman and Harbor Worker's Compensation Act, 33 U.S.C. §905(b). On July 9, 2010, the plaintiffs added FJB as a defendant, arguing FJB is vicariously liable for the negligence of its employees aboard the rig. On June 29, 2010, Liberty Mutual Insurance Company ("Liberty Mutual"), OES's workers compensation insurer, intervened, seeking reimbursement of all benefits and medical expenses paid to and on behalf of the plaintiff.[1]

On May 10, 2011, FJB filed the instant motion for summary judgment, arguing all of

---

[1] On March 28, 2011, FJB filed a third-party demand against plaintiff's employer, OES, arguing that pursuant to the contract between OES and McMoran, OES is obligated to defend and indemnify FJB from and against the claims asserted by plaintiffs and the intervention of Liberty Mutual. *See* Doc. 38. On April 4, 2011, FJB filed a second third-paryt demand against Liberty Mutual, arguing it is an additional insured on the policy issued by Liberty to OES and that the policy provides full and complete coverage to to FJB for all claims asserted by FJB in this litigation, noting Liberty Mutual's failure to acknowledge coverage and failure to undertake a defense of and agree to indemnify FJB. *See* Doc. 42.

2

plaintiffs' claims against it should be dismissed, because FJB did not owe a duty to Mr. Morgan, and did not breach a duty to Mr. Morgan.

## II.     Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e). As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore*, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990), *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Id.* at 888-89 (1990) (internal quotations and citations omitted). The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility

4

determinations are not part of the summary judgment analysis." *Id.* To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### III. Law and Analysis

It is well-settled a principal is not liable for the torts of an independent contractor unless the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions. *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cit. 1989), *citing Zepherin v. Conoco Oil Co.*, 884 F.2d 212, 213 (5th Cir.1989); *Boutwell v. Chevron U.S.A., Inc.*, 864 F.2d 406, 407 (5th Cir.1989); *Grammer v. Patterson Services, Inc.*, 860 F.2d 639, 641 (5th Cir.1988), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 698 (1989); *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 329 (5th Cir.1987); *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549-50 (5th Cir.1987), *cert. denied*, 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988); *Hawkins v. Evans Cooperage Co.*, 766 F.2d 904, 906 (5th Cir.1985); *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 437 (5th Cir.1984); *McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 174-75 (5th Cir.1979).[2]

In *Dixon v. Danos and Curole Marine Contractors, Inc.*, 1998 WL 812393, 2 (E.D. La. 1998) (J. Vance), the district court cited Fifth Circuit jurisprudence in explaining the terms of a contract, while relevant, do not necessarily determine the outcome:

> The Fifth Circuit has emphasized that "the relationship between the principal and the

---

[2] Additionally, a principal may not escape liability arising out of ultrahazardous activities which are contracted out to an independent contractor. It is undisputed the foregoing exception to the general rule does not apply in this case. *See Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 329 (5th Cir. 1987).

> independent contractor is in large measure determined by the terms of the contract itself." *Ham v. Pennzoil Company,* 869 F.2d 840, 842 (5th Cir.1989). Nonetheless, the court typically looks beyond the contract to determine whether the principal's actions constitute operational control. *Id.* ("There is evidence that this contractual splitting of the duties and responsibilities for the workover job was in fact followed on the rig."); *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 193 (5th Cir.1991) (reviewing the actual control asserted by Shell employees over the independent contractor in addition to the contract itself).

*Dixon,* 1998 WL 812393, *2, *citing Ham v. Pennzoil Company,* 869 F.2d 840, 842 (5th Cir.1989) (court stated mere fact that Pennzoil maintained "company man" on rig does not demonstrate it retained control of project, noting relationship between principal and independent contractor is relevant, but also noting courts look beyond contract to determine what relationship actually was on date of injury).

In both *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 193 (5th Cir.1991) and *Landry v. Huthnance Drilling Co.,* 889 F.2d 1469, 1471 (5th Cit. 1989), the Fifth Circuit found there was insufficient control to meet the exception to the independent contractor rule. In *Duplantis,* the court held the "mere fact that Shell maintained a 'company man' on the drilling rig [did] not demonstrate that it retained control of the project." *Duplantis,* 948 F.2d at 193. Indeed, the record indicated only Shell's "company man" held safety meetings and could make suggestions regarding personnel decisions. *Id.* Similarly, in *Landry,* the court held certain instructions given to the independent contractor did not constitute operational control because the principal never "told [the plaintiff] how to do his job." *Landry,* 889 F.2d at 1471-72. The court reasoned, "only instructions designating 'how to' conduct operations merit application of the operational control exception," stating:

> Since the contractor was free to conduct the test in its own way, the principal did not exercise operational control. Estave's instructions to Landry are similar to those given by the principal in *Grammer.* Estave retained the right to inspect the connections, protect the pipe and connectors from damage and to tell Landry the

> amount of torque to apply. The Hydril representative gave Landry orders because he wanted certain results reached - to protect the pipe and connectors from damage while torque was applied - but he never told Landry how to do his job. He never told Landry how to rig, counterbalance, raise or lower the tongs. Nor is there evidence that Landry was prevented from further adjusting the counterbalance had he wished to do so.

*Landry*, 889 F.2d at 1472.[3]

In contrast, in *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 329 (5th Cir. 1987), operational control existed where the jury found the company man told the drilling crew not to wash the rig floor, the condition of which caused Bartholomew's slip and fall accident on a wet and muddy surface. The court stated:

> Where an available safe method, which includes the taking of adequate precautions, will render it at least ordinarily safe, and the work is done in an unsafe manner, the employer will be liable if he has expressly or impliedly authorized the particular manner which will render the work unsafe, and not otherwise.

*Bartholomew*, 832 F.2d at 329, *citing Ewell v. Petro Processors of Louisiana, Inc.*, 364 So.2d 604, 607 (La. App. 1st Cir. 1978), *writ denied*, 366 So.2d 575 (La. 1979). In *Bartholomew*, on appeal, the Fifth Circuit was tasked with determining whether there was any evidence the principal (CNG) exercised operational control over its independent contractor (Booker), *or expressly or impliedly authorized the unsafe practice which caused the plaintiff's injuries.* The court noted:

> Bartholomew testified at trial that the company man, J.T. Madison, expressly told the driller, Perry Gill, not to wash the rig floor until after the operation was completed. Bartholomew also testified that the driller was fearful for his job. As a floor hand, Bartholomew took his orders directly from the driller. Bartholomew's testimony was not directly contradicted by any of CNG's witnesses. In fact, the Booker tool pusher

---

[3] In *Landry*, the Fifth Circuit affirmed the decision of the district court, which granted a directed verdict after trial in favor of the principal, finding the principal's representative did not exercise operational control over the plaintiff and was "solely an inspector." The decision was affirmed on appeal. 889 F.2d at 1470. *See also Ham*, 869 F.2d at 842 ("Pennzoil's activities in this case were in no way similar. The district court expressly found that Manning had no such involvement. Pulling the pipe out of the hole and stabbing the TIW valve were in SEE's hands. Manning gave no unsafe orders and he did not expressly or impliedly authorize any unsafe practices.").

7

      testified that he had heard of some company men ordering the driller to speed up the operations and not to wash down the rig. Emmett Farrar, the other company man for CNG, who was independently employed, testified that he did not know whether or not Madison had ever issued such an order to the driller. Thus, the question was one of Bartholomew's credibility. The jury was entitled to make that credibility determination and did so. On the record before us, we conclude that some evidence supported a finding by the jury that CNG, through its representative on the rig, J.T. Madison, expressly authorized the unsafe practice of failing to wash down the rig floor which eventually caused Bartholomew's accident.

*Bartholomew*, 832 F.2d at 329-30.

      In the instant case, FJB focuses on the fact that FJB did not tell Mr. Morgan how to perform his work, and, like the plaintiff in *Landry*, Mr. Morgan controlled his own work activities and made his own decisions as to how to complete his tasks. Mr. Morgan disputes the foregoing, presenting the testimony of Randy O'Brien, a Hercules toolpusher, who testified the FJB company man had "full control" of the project, and was on the rig floor actively supervising the rig operations.[4]

      Additionally, Mr. Morgan argues FJB also breached an independent duty of reasonable care to Mr. Morgan. Specifically, Mr. Morgan argues Patrick Young, the FJB company man, was contractually obligated to coordinate the equipment of the subcontractors to ensure the work could be done in a safe manner. Mr. Young did not deny ordering the hammer in question,[5] which was too heavy to be lifted by the crane while assembled. Mr. Morgan argues if Mr. Young had checked the weight capacity of the crane before he ordered the hammer in question, he would have known the hammer could not be lifted off the rig without being disassembled first. Additionally, Mr. Morgan argues once Mr. Young learned the weight capacity of the crane, Mr. Young should have ordered

---

[4] *See* Deposition of Randy O'Brien, attached as Exhibit "A" to plaintiffs' opposition brief, Doc. 59, at p. 33, 35-37.

[5] Although Mr. Young did not deny ordering the hammer after being shown an invoice bearing his name as the individual who ordered the hammer, he testified he did not recall doing so. *See* Deposition of Patrick Young, attached as Exhibit "B" to plaintiffs' opposition brief, Doc. 59, at p. 40.

a smaller hammer that was within the weight capacity of the rig's crane, and that had he done so, the OES hands would not have been forced to manually remove 40 bolts on the hammer which had tightened during the hammer job. In the foregoing manner, Mr. Morgan argues FJB "controlled how the work would have to be preformed by OES on the job when it ordered a hammer whose weight could not be handled by the size crane on the rig." Additionally, Mr. Morgan argues Mr. Young allowed him to work 30 hours as a hammer operator without a break. Mr. Morgan presented the testimony of Mr. Young, who confirmed he has shut down jobs when contractors have worked more than 12 hours without relief, and does not believe it is safe to allow a worker to work more than 30 hours without a break.[6] Mr. Young acknowledged that safety matters are the responsibility of the company man.[7]

Based on the arguments of the parties, this Court concludes it need not determine whether plaintiff has presented sufficient evidence of operational control by FJB over Mr. Morgan's work, because even if this Court were to conclude there was not sufficient control, summary judgment in favor of FJB would still not be appropriate, as there are genuine issues of material fact regarding whether Mr. Young created an unsafe working environment and whether that environment is causally related to plaintiff's alleged injuries. Indeed, Mr. Morgan has presented evidence that Mr. Young ordered the hammer in question, which necessitated the disassembly of the crane by hand, which, plaintiff argues, led to the plaintiff's injury, and, furthermore, that Mr. Morgan has presented evidence Mr. Young allowed Mr. Morgan to work for 30 hours without a break before disassembling the hammer and this Court assumes Mr. Morgan suggests a causal relationship between that decision

---

[6] *See* Deposition of Mr. Young, at p. 58-61.

[7] *Id.* at p. 30.

and his alleged injuries. Therefore, this Court concludes there are disputed questions of fact regarding whether Mr. Young expressly or impliedly authorized an unsafe practice or created an unsafe workplace which caused or contributed to the plaintiff's injuries. Ergo, this Court cannot conclude, as a matter of law, that FJB owed or did not owe the plaintiff a duty to Mr. Morgan, nor that the duty was or was not breached. The facts inherent in determining those issues remain in dispute, thus, precluding summary judgment on those issues. Under these circumstances, this Court believes summary judgment in favor of FJB is not appropriate at this time.

Considering the foregoing, IT IS ORDERED that the Motion for Summary Judgment [Doc. 52] filed by defendant F.J. Brown & Associates, Inc. ("FJB") is DENIED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___13___ day of July, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE