RECEIVED
AUG 2 2 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

RANDAL MORGAN, ET AL. — CIVIL ACTION NO. 09-2091

VERSUS — JUDGE DOHERTY

HERCULES DRILLING CO., LLC, ET AL. — MAGISTRATE JUDGE HANNA

**MEMORANDUM RULING**

Pending before the Court is the Motion for Summary Judgment [Doc. 45] filed by plaintiffs Randal and Renee Morgan ("plaintiffs"). In their motion, plaintiff seeks dismissal of the Complaint of Intervention fled by Liberty Mutual Insurance Company ("Liberty Mutual") on grounds "the policy of insurance issued by Liberty Mutual contains a wavier of subrogation provision which waives Liberty Mutual's right to recoup from the defendants herein the benefits paid under the Liberty Mutual insurance policy."[1] Liberty Mutual opposes the motion [Doc. 49], and plaintiffs filed a Motion for Leave to Reply [Doc. 55], which is herein GRANTED.

On August 8, 2011, this Court issued a Minute Entry, noting it was unclear to the Court whether Liberty Mutual's argument contained within its opposition brief – namely, Liberty Mutual's argument as to prematurity/standing – was addressed to both F. J. Brown & Associates, Inc. ("FJB") and the plaintiffs, or to FJB only. In its Minute Entry, this Court gave Liberty Mutual until August

[1] *See* motion for summary judgment filed by F.J. Brown & Associates, Inc. ("FJB"), Doc. 43, at page 1. FJB filed an almost identical motion, which was withdrawn upon the request of FJB on August 17, 2011 [Doc. 76]. Plaintiffs adopt and incorporate many aspects of FJB's motion, hence the references to FJB's motion throughout this Ruling.

19, 2011 to clarify its argument in a supplemental brief. The Court noted that failure to submit a brief within the delay provided would indicate to this Court that Liberty Mutual does not intend to pursue its argument as to prematurity against the plaintiffs. In that event, this Court noted it would likely rule in plaintiffs' favor on the motion for summary judgment, with reasons to be provided in a Memorandum Ruling.

Liberty Mutual failed to file a supplemental brief within the delay allowed. Therefore, and for the following reasons, it is ORDERED that plaintiffs' Motion for Summary Judgment [Doc. 45] is GRANTED in its entirety, and the Complaint of Intervention filed by Liberty Mutual is DISMISSED WITH PREJUDICE.

## I. Factual and Procedural Background

The instant lawsuit arises out of injuries allegedly sustained by the plaintiff, an employee of Offshore Energy Services, Inc. ("OES"). The plaintiff worked for OES for approximately sixteen years; in the hammer department for ten years, after which he transferred to the casing department. Although he was working in the casing department at the time of his injury, the plaintiff had agreed to go offshore on a hammer job because OES was busy and had run out of regular offshore workers in the hammer department. Plaintiff was injured while disassembling a hammer after completing a hammer job.

At the time of plaintiff's injury, McMoran Oil & Gas, LLC ("McMoran") was the operator of the well in question. McMoran contracted with Hercules Drilling Co., LLC for the use of the inland drilling barge Hercules 49. McMoran contracted with FJB to supply a "company man," and with plaintiff's employer, OES, to provide the hammer services.

OES provided its services to McMoran pursuant to a written contract, referred to herein as

the Master Service Agreement ("MSA") between OES and McMoran. Under Section 7.4.1 of the MSA, OES was required to maintain workers compensation insurance coverage, as follows:

> 7.4 At all times, CONTRACTOR [OES] shall provide or cause to be provided the following types of insurance:
>
> 7.4.1 Workers Compensation. Such insurance shall be in full compliance with the law in the state where the Work is to take place and shall contain a voluntary compensation endorsement and include an alternate employer/borrowed servant endorsement naming OWNER. Coverage in compliance with the following shall also be provided where appropriate, based on the location and type of Work performed:
>
> - United States Longshoreman's & Harbor Worker's Compensation Act
> - Outer Continental Shelf Lands Act

Section 7.4.7 of the MSA provides:

> The required insurance listed in all paragraphs above shall be endorsed to include a waiver of subrogation in favor of the Owner Indemnified Parties. The required insurance listed in subsections 3, 4, 5 and 6 of this section 7.4 shall be endorsed to name all of the Owner Indemnified Parties as additional insureds and each insurance shall be primary as respects any other insurance that may be available to such additional insureds. Contractor's obligation to have its insurance endorsed to include a waiver of subrogation in favor of the Owner Indemnified parties and to name the owner Indemnified Parties as additional insureds are applicable only to the extent of the liabilities and obligations assumed by CONTRACTOR under this Agreement.

The term "Owner Indemnified Parties" is defined in Section 5.1 of the MSA as:

> CONTRACTOR shall protect, indemnify, defense and save harmless: (i) OWNER, (ii) any parent, subsidiary or other affiliate of OWNER, (iii) any and all co-venturers and co-owners of oil gas or mineral properties, (iv) any and all of the respective employees, agents, contractors, subcontractors, consultants, shareholders, members, directors, officers or assigns of each of the persons or entities described in (i) through (iii), and (v) the insurers and subrogees of each of the persons or entities described in (i) through (iv) (collectively the "Owner Indemnified Parties") from and against

> all claims, demands or causes of action of every kind and character for bodily injury or death of, or any property damage or loss sustained by, CONTRACTOR or CONTRACTOR's employees, subcontractors or consultants arising directly or indirectly out of the Work under this Agreement, unless caused by the gross negligence or willful misconduct of OWNER. For the purposes of this Article 5.0, the reference to the contractors of OWNER does not refer to CONTRACTOR hereunder.

Pursuant to the foregoing insurance requirements in the OES-McMoran MSA, the Liberty Mutual policy contains the following waiver:

**Waiver of Our Right to Recover from Others Endorsement**

> We have the right to recover our payments from anyone liable for an injury covered by this policy, We will not enforce our right against the person or organization in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.).
>
> This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
>
> Schedule
>
> All persons or organizations that are parties to a written contract that requires you to obtain this agreement, provided you executed the contract before the loss.[2]

Plaintiff Randal Morgan and his wife filed the instant lawsuit on December 10, 2009 against Hercules and McMoran for personal injuries and damages under the general maritime law and Section 905(b) of the Longshoreman and Harbor Worker's Compensation Act, 33 U.S.C. §905(b). On July 9, 2010, the plaintiffs added FJB as a defendant, arguing FJB is vicariously liable for the negligence of its employees aboard the rig. On June 29, 2010, Liberty Mutual Insurance Company ("Liberty Mutual"), OES's workers compensation insurer, intervened against McMoran and Hercules, seeking reimbursement of all benefits and medical expenses paid to and on behalf of the

---

[2] *See* Liberty Mutual Commercial Policy Workers' Compensation and Employers' Liability Policy for OES, as ans per Named Insured Endorsement, attached as Exhibit "E" to FJB's motion for summary judgment, at 00039.

plaintiffs.[3]

On April 11, 2011, plaintiffs filed their motion for summary judgment, arguing the waiver of subrogation provisions contained in both the OES-McMoran MSA and the Liberty Mutual policy are applicable in this case and waive Liberty Mutual's right to recoup *from the defendants herein* the benefits paid under the Liberty Mutual policy.

## II. Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e). As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial,

---

[3] On March 28, 2011, FJB filed a third-party demand against plaintiff's employer, OES, arguing that pursuant to the contract between OES and McMoran, OES is obligated to defend and indemnify FJB from and against the claims asserted by plaintiffs and the intervention of Liberty Mutual. *See* Doc. 38. On April 4, 2011, FJB filed a second third-party demand against Liberty Mutual, arguing it is an additional insured on the policy issued by Liberty to OES and that the policy provides full and complete coverage to FJB for all claims asserted by FJB in this litigation, noting Liberty Mutual's failure to acknowledge coverage and failure to undertake a defense of and agree to indemnify FJB. *See* Doc. 42.

the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also*, *Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore*, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990), *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Id.* at 888-89 (1990) (internal quotations and citations omitted). The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the

> nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III. Law and Analysis

Plaintiffs argue the waiver of subrogation provisions in both the OES-McMoran MSA and the Liberty Mutual policy are applicable in this case and waive Liberty Mutual's right to recoup *from the defendants herein* the benefits paid under the Liberty Mutual policy. Liberty Mutual raises several objections in response to the instant motions, which this Court will consider in turn.

### 1. Intervention is not subrogation and is not waived by either the MSA or the Liberty Mutual Policy

In response to the plaintiffs' motion, Liberty Mutual does not dispute the workers' compensation policy at issue contains a wavier of subrogation provision. However, Liberty Mutual argues it has an independent statutory right – arising under Louisiana worker's compensation law,

La. Rev. Stat. §23:1101(B)[4] – to recover the amounts it has paid. Liberty Mutual argues the waiver provision contained in the Liberty Mutual policy does not waive this independent statutory right under which Liberty Mutual is entitled to recover workers compensation payments it has already paid.

Liberty Mutual cites *Sandbom v. BASF Wyandotte, Corp.*, 674 So.2d 349 (La. App. 1st Cir. 1996) in support of its argument. However, this Court's interpretation of *Sandbom* is that the case stands only for the proposition that an insurer *can* waive its right to subrogation, if such waiver is expressly stated in a contract or policy, to wit:

> An employer may contractually waive the employer's right to reimbursement of compensation benefits paid an employee. Additionally, the insurance carrier may waive such rights in its policy of insurance with the employer, or by separate agreement with the third party. However, *absent a specific waiver by the carrier*, the carrier remains entitled to reimbursement for compensation benefits paid. No evidence was presented that Aetna waived its right of reimbursement in either its policy of insurance or by separate agreement. It is consequently entitled to reimbursement for the benefits paid.

674 So.2d at 363 (emphasis added). Thus, this Court does not read *Sandbom* to hold that, despite an express waiver of subrogation contained in either a contract or an insurance policy, there exists

---

[4] La. Rev. Stat. 23:1101(B) states:

> B. Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit in district court against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents. The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependents against the third person, and where the recovery of the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage. The amount of any credit due the employer may be set in the judgment of the district court if agreed to by the parties; otherwise, it will be determined pursuant to the provisions of R.S. 23:1102(A).

La. Rev. Stat. §23:1101 (West 2011).

a separate and independent statutory right to reimbursement that contravenes the expression of waiver in the agreement or policy. Indeed, in *Sandbom*, the court stated

> The right of a workers' compensation insurer to bring suit against a third party to recover compensation benefits which the insurer has paid on behalf of the injured employee is likewise limited to cases where the injury creates a legal liability in a third person tortfeasor to pay damages.
>
> *An employer may contractually waive the employer's right to reimbursement of compensation benefits paid an employee. Additionally, the insurance carrier may waive such rights in its policy of insurance with the employer, or by separate agreement with the third party.*

*Sandbom*, 674 So.2d at 362-63 (emphasis added) (internal citations omitted).

In the instant case, Liberty Mutual's policy contains an express waiver of its right to reimbursement. This waiver is applicable and has not been limited in any way. Considering the foregoing, this argument does not defeat the plaintiffs' motion for summary judgment.

**2. Liberty Mutual argues the waiver of subrogation contained in the MSA between OES and McMoran is null and void under the Louisiana Oilfield Indemnification Act**

Liberty Mutual argues the waiver of subrogation contained in the MSA between OES and McMoran violates the Louisiana Oilfield Indemnification Act ("LOIA") because it contains a waiver of subrogation provision which is expressly void and unenforceable under the LOIA.

La. Rev. Stat. §9:270 states in relevant part:

> A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent

contractor who is directly responsible to the indemnitee.

B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

C. The term "agreement," as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

D. (1) The provisions of this Section do not affect the validity of any insurance contract, except as otherwise provided in this Section, or any benefit conferred by the workers' compensation laws of this state, and do not deprive a full owner or usufructuary of a surface estate of the right to secure an indemnity from any lessee, operator, contractor, or other person conducting operations for the exploration or production of minerals on the owner's land.

[ . . . ]

*G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Louisiana Revised Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.*

La Rev. Stat. §9:2780 (West 2011) (emphasis added).

For the LOIA to apply to this case, Louisiana law must apply. Thus, the parties invite this Court to frame the issue in terms of whether federal maritime or state law applies. Plaintiffs argue – by way of adopting the motion filed by FJB, which, again, has been dismissed – the contract between McMoran and OES contains a choice of law provision that selects general maritime law as the governing body of law if the general maritime law is applicable to the case.[5] Plaintiffs argue under the MSA, OES was to perform work aboard a drilling barge in navigable waters in the South Marsh Island/Mount Point Field, and therefore, pursuant to *Grand Isle Shipyard, Inc. v. Seacor Marine*, LLC, 589 F.3d 778, 781 (5th Cir. 2009), general maritime law is applicable to the MSA between OES and McMoran.[6]

---

[5] Section 23 of the MSA states:

> 23.0 GOVERNING LAW. This agreement shall be governed by the general maritime laws of the United States, if applicable, and otherwise by the laws of the State of Louisiana, exclusive of any conflicts of law principles that would require the application of the laws of another jurisdiction.

[6] In *Grand Isle Shipyard*, the Fifth Circuit confirmed the "focus-of-the-contract" test to determine the law applicable to contractual disputes, acknowledging the custom and practice in the industry of operating under two contracts, the MSA and a particularized work order that follows the MSA, to wit:

> As we discussed in *Davis & Sons v. Gulf Oil Corp.*, 919 F.2d 313, 315-17 (5th Cir.1990), *reh'g denied*, 924 F.2d 1054 (5th Cir.1991), it is a common practice for companies contracting for work in the oilfield to enter into contracts in two stages. Typically, they first sign a "blanket contract" that may remain in place for an extended period of time. Later, they issue work orders for the performance of specific work, which usually incorporates the terms of the blanket contract. As we said in *Davis & Sons*, where the contract consists of two parts, a blanket "contract followed by later work order, the two must be interpreted together."
>
> Generally, each work order is for a discrete, relatively short-term job. Unless a contrary intent is reflected by the master contract and the work order, in determining situs in a contract case such as this, courts should ordinarily look to the location where the work is to be performed pursuant to the specific work order rather than the long term blanket contract.

589 F.3d at 787.

In support of its motion – which, again, has been dismissed, but upon which the plaintiffs rely in seeking

This Court declines to frame the issue in this manner, relying on *Fontenot v. Chevron USA, Inc.*, 676 So.2d 557 (La. 1996) and *Hudson v. Forest Oil Corp.*, 372 F.3d 742 (5th Cir. 2004). In both *Hudson* and *Fontenot*, the court began its analysis with an examination of whether the LOIA was applicable in the factual situation before it. If it is applicable, the Fifth Circuit proclaims it is only at that point that a consideration of the maritime or non-maritime nature of the contract is necessary. The Fifth Circuit has held courts employ a two-part test to determine whether the LOIA generally applies to an agreement's provisions, whether that agreement is a contract between two parties or an insurance policy, as follows: (1) whether the agreement pertains to an oil, gas, or water well; and (2) whether the agreement relates to the exploration, development, production, or transportation of oil, gas, or water. *See Hudson*, 372 F.3d at 745. Although the parties have not addressed this issue in their briefs, this Court will, for the purposes of these motions only and without specifically so finding, assume, for these limited purposes only, that the MSA between OES and McMoran and the Liberty Mutual policy satisfy the foregoing test. However, it is pivotal to note plaintiffs rely *only* on the waiver of subrogation by OES on behalf of McMoran and by Liberty Mutual itself in OES's workers compensation policy. Plaintiffs *do not* rely on any indemnification clause contained in either agreement. In *Hudson*, the Fifth Circuit, relying on the Louisiana Supreme Court's decision in *Fontenot*, explained:

> However, the [*Fontenot*] court determined that use of a waiver of subrogation clause *alone* would be permissible because it does not *shift liability* from the tortfeasor oil company back to the oilfield service contractor. The *Fontenot* court further explained that it would not "make sense to void a waiver of subrogation clause where

---

dismissal of the intervention – FJB attached to its reply brief a copy of the bid submitted by OES for the work to be performed aboard the Hercules 49 inland drilling barge in the South Marsh Island/Mount Point, which was accepted by McMoran pursuant to the MSA between McMoran and OES, and argues that pursuant to *Grand Isle Shipyard*, the MSA in question and the subsequent bid order evidence a maritime contract.

> there is no indemnification clause sought to be enforced or where the oil company is not found to be negligent or strictly liable" because in these circumstances the waiver of subrogation does not frustrate or circumvent the prohibitions of LOAIA. *Id.* In fact, invalidation of such waivers "might very well do damage to basic concepts of contract law (agreement for payment in exchange for the waiver, normally a valid contractual provision)." *Id.* at 567.
>
> . . . . the most important aspect of *Fontenot* is that "voiding a waiver of subrogation clause only achieves the purpose of [LOAIA] when such a clause is sought to be enforced in conjunction with the enforcement of an indemnification clause." *Fontenot* tackled the validity of waivers of subrogation used on their own: precisely the situation here because Forest and Zurich solely and formally invoked Ace's waiver of subrogation as a defense to Ace's intervention, not an indemnity provision.

372 F.3d at 746-47 (internal citations omitted), *citing Fontenot*, 676 So.2d 557.

This case is analogous to both *Fontenot* and *Hudson* in that neither the insurance carrier nor the parties seeking dismissal of the complaint of intervention rely upon an indemnity agreement to void the waiver provision in either the MSA or the workers compensation policy. Rather, as in *Hudson* and *Fontenot*, *only the waiver of subrogation provision is involved* in the instant case. Therefore, even if this Court were to agree that Louisiana law applies to the MSA between OES and McMoran – a finding this Court need not make – and even if this Court were to agree that, under Louisiana law, the LOIA applies to the contracts at issue (both the MSA and the Liberty Mutual policy) (again, a finding this Court need not make), this Court concludes, based on the established jurisprudence of both the Louisiana state courts and the Fifth Circuit, the waiver of subrogation provision contained in both the OES-McMoran MSA and the Liberty Mutual policy would not violate the LOIA under the facts of this case. *See Hudson* v. Forest Oil Corp., 372 F.3d at 746.

The two arguments addressed in this Ruling are the only arguments advanced by Liberty Mutual in opposition brief vis-a-vis the motion for summary judgment filed buy the plaintiffs. As this Court concludes Liberty Mutual has come forward with insufficient evidence or argument to

defeat the plaintiffs' motion, it is ORDERED that the plaintiffs' Motion for Summary Judgment [Doc. 45] is GRANTED in its entirety, and the Complaint of Intervention filed by Liberty Mutual is DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 22 day of August, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE